17-13-36 Abel Ponce v. Classic Party Rental Counsel, you may proceed. Good morning, Justices. Good morning, Counsel. May it please the Court, my name is Emily Vineard. I represent the Petitioner Appellant Abel Ponce on behalf of the Appellant Boulay Law Offices. This matter on appeal is regarding attorney fee, the attorney fee distribution ordered by the Commission. With the Court's pressure at this time, I'd like to reserve two minutes for rebuttal. Can you speak up a little bit, please? This is for recording. It doesn't really amplify. Okay. I'll speak up. Thank you. Appellant is here today requesting that this Court reverse the Commission and find that Boulay Law Offices, as the successor attorneys in this case, should be entitled to the full contract fee of the $4,487.58 for the following reasons. First, the Commission applied the incorrect legal standard. They seem to apply a comparison apportionment approach in their findings in the order, and it's ruled that attorney fees should be equally apportioned between the prior petitioner's law firm, the appellant firm, and with Boulay Law Offices as the successor attorneys. Your position is the prior law firm should get no compensation whatsoever? Yes, that's our position. Even though they were on the case for two years and they documented the work they did? Well, the work that they did was more reactionary than proactive, and that's part of the basis for that. But the Commission-based decision is part of the conclusion, but it appears that Attorney DiPaolo and Attorney Boulay spent approximately the same amount of time in the matter, which is the incorrect standard of law to apply here. Additionally, the Commission's award of $2,243.79 to the DiPaolo firm for a quantum mirror was also against the manifest way of the evidence. Since the evidence demonstrates that any actions taken by the DiPaolo firm were purely reactive and not proactive, specifically there was not sufficient action taken by the DiPaolo firm in order to obtain the surgery that petitioner had. Was that really true? I think you're ignoring. Didn't he specifically send a letter demanding surgery? I can give you the date of the letter. Yes, but there was a number of 19B hearings filed at the time that the case was to be advanced to trial, and the response attorney had sent out a letter requesting a settlement demand, which the Commission referred in its order. The Commission noted that that was evidence that DiPaolo firm had moved his forward enough to get the case to a position where the response attorney would solicit a settlement demand in hopes of resolving the claim. But that wasn't actually what the petitioner wanted as far as – Well, hang on a second. The Commission pointed out that by June 7, 2013, and tell me if this is wrong, DiPaolo moved the matter forward to the point where Respondent's Counsel in the underlying matter, Respondent's Counsel, the other side, wrote to DiPaolo soliciting a settlement demand in the hope of resolving the claim. Yes. Did the Respondent's Counsel write to DiPaolo soliciting a settlement demand? Yes. And you're characterizing that as not having moved the case forward at all? Well, because the petitioner was pending the surgery, the surgery that his treating physician had recommended and that he wanted. And so the case wasn't ready for settlement at that point. But there was also a problem with the arbitrator too, wasn't there? There was an issue with the arbitrator, however – and let me check the dates here. There's an issue that Arbitrator Conant was the arbitrator on the case, however, he needs to be recused. So that delayed the proceedings. Does anybody contest that? Well, the only time he was asked to enter recusal was on July 25, 2013, which was greater than four days later, and that was by Respondent's Counsel. That wasn't the reason for any delay in the case, because the DiPaolo firm was aware that Arbitrator Conant had been assigned the case since it had received the arbitrator assignment back in 2011, and then the defense firm had entered an appearance for Respondent in May of 2012. So this was over a year that they knew that Arbitrator Conant was assigned to the case and that if it was going to have to be advanced trial, that would be an issue that would require recusal. And that wasn't even done until Respondent's Counsel went ahead and took that step, and then it was granted four days later. So it's our position that that could not be. Well, it's your position that nothing that the other side did entitled them to any money. I mean, let's be candid, right? Well, yes. Unfortunately, no. I mean, because the. . . That's the bottom line here. They should get nothing. Because the work done was just reactive. They got a letter, and at that point, requesting settlement. What do you mean reactive? Does it come out of some kind of case law that says reactive, you don't get any compensation? What do you mean by reactive? That phrase is not specifically from case law, but there is case law that quantum merit factors do require that there is a benefit to the client in order to charge a fee in order to be entitled to payment under quantum merit. And those factors were in the Johnson case, which I'm sure this Court is well aware of the six factors. Yes. But it does state that the benefits resulted to the client is one of the six factors to be considered. And in this particular case, there wasn't a benefit to the client because he was pending the surgery that he needed, and he wasn't getting it. Well, he didn't settle the case, but the commission pointed out a number of things. The letter that he sent, the work that he did, the fact that his firm, before your firm got involved, moved it to the point where it caused the other side to solicit a settlement demand. It's a matter of your perspective. You can characterize that as not doing anything, but that's going to be for us to decide if that was something. Right. That's correct, and it's for the Court to decide that. But additionally, the commission stated that they felt. Well, do we decide whether it was something, or do we review the commission for its expertise in making that finding? Yes, you would review the commission. It was for the commission to decide if that was something. Yeah, so we're here to see whether the commission erred in making that finding, right? Yes, but also whether the evidence in the record, it's a man this way, the evidence standard. Right. I mean, they made a conclusion based on evidence, and you're saying the evidence was insufficient to make that conclusion. Right. Correct. Yes. Right. And. I mean, we don't, it's not. We don't re-weight the evidence, I know. Yes. That's correct. But the evidence in the record, the man this way, the evidence in the record shows that. Well, I hate to waste time getting into that standard, but the recent case laws, DePaulo talks about abuse of discretion. I think you need to get away from those earlier cases. I'm fairly convinced DePaulo was the standard. Abuse of discretion, that man this way, and the fee issue. Well, even with that, the decision uses words and phrasing saying that the fee should be proportioned between the two attorneys equally, the two law firms. And the word also states, the commission found it appears that Attorney DePaulo and Attorney Lulay spent approximately the same amount of time in the matter. Obviously, looking through the record, we didn't enter into evidence any records of our time or any of the work that was specifically done because the Lulay firm would be entitled to the contract fee, being the successor attorneys who had ultimately settled the case. Well, didn't your firm have a very detailed memo in the pleading outlining the John's factors? Isn't that true? Your theory of the case? Yes. And the commission specifically acknowledged they reviewed all of your arguments and your factors? So doesn't that tell you, obviously, they must have considered it because they said they did? Yes, it was considered, but it seemed that the commission took more of a proportionate approach in awarding the fees equally between each firm based on the fact that each firm had spent approximately the same amount of time. Additionally, according to established case law on this issue, particularly the case that we cited, First National Bank of Springfield, in the appellant's brief, where the party seeking quantum merit cannot show that its services benefit the client, its quantum merit claim necessarily fails. In order to show that they're entitled to quantum merit, the services that they provided had to have benefited the client in some way. And in this case that's going back to this issue of the surgery, the petitioner needed the surgery that he was prescribed. And at that point, the case wasn't ready to be settled due to the petitioner's ongoing treatment that he required. Shortly before the petitioner hired Louie Laws to handle his case, prior petitioner's counsel did request a hearing, which is in the record, but not a 19B8A hearing, which would have been the proper procedure to follow had he been seeking a hearing on the surgery that the petitioner had been prescribed. Additionally, going back to the letter that the commission noted in its order that the letter sent by our respondents' counsel seeking settlement demand, the letter by our respondents' counsel came to consider evidence of the Topolo firm's efforts, which benefited the client, the quantum merit factor, because it didn't benefit the petitioner whatsoever, because he wasn't ready to settle, he needed the surgery. And so for the foregoing reasons, the Pell Office respectfully requests that this court reverse the decision of the commission and find that Louie Laws is entitled to the full contract fee of the $4,487.58. Thank you, Your Honors. We have time and a reply. Thank you. Good morning, members of the court and counsel. I'm not a Topolo witness, I'm the attorney. I do agree with counsel that the standard is probably a quantum merit standard, the John standard. I believe the commission, I think that case will tell us, John versus Kaplan, tell us all we need to know to adjudicate these situations. What it does not tell us is what we do when a quantum merit limit would work an unfair result. And by that I mean, is the commission awarding me my hours, which are very, very scant minimum, would be an unfair result to counsel. In this case, if I had a computer system back then that we have now, we could have documented 25, 30 hours his time. We live in a fantasy in that industrial commission that these cases hold fees of $200 or $300 an hour. If you pay my fees at $300 an hour or $200 an hour, there's nothing left for the subsequent lawyer. Unless, of course, the client gets billed for the value of the surgery. Gets a $30,000 surgery, he owes $6,000 in fees by contract, by statute. We don't do that as practitioners. That goes, it's part of the territory. We do that on a daily basis. These situations occur so often on that eighth floor, hundreds of times a year, that I notice that even our settlement contracts now have, for the past few years, a box on them. They can check it off as the attorney to say that there's no prior fee petition pending. Why does this court not see these situations? Because we resolve them amicably, an umbrella of collegiality. We go before the arbitrator, sometimes even the commissioner. He says, okay, you take this and you take this, and we get on with them. Now, in this case, I documented, I think, nine hours or 12 hours. It doesn't matter. The time is a lot more. The commissioners, who are all former practicing workers' comp attorneys, know that. If they were to give me the entire fee, would work an unfair result upon counsel, they say split. You did this, you did this, you each get so much. That's fine. I've practiced by that rule for 30 years now. The value of my services, the Johns case also tells us, cannot be determined because I was not allowed to bring the case to fruition. The client had to have a case filed. He had to have his medical records. His physician had to be spoken to by his lawyer to get this prescription for initial physical therapy. The same physical therapy, which, if I would have been asking for, would have been contrary to protocol. Contrary to ODC or whatever protocol fit their purpose at the time. I would have had to go to court, to the commission, to get that. And they reversed the runs. So we eliminated this argument that he was not compliant with medical treatment. That's valuable. I couldn't get the case tried because I didn't have an hour's time. Everything that I did was not only necessary, but I was obligated to do all of those things. If I didn't, I would have been remiss. There's no doubt. So those services do have value, as anybody who practices knows. Those are the things which must be done. I could have told the client to sit down and wait. I'm not going to do anything until this gets straightened out between the doctors. What kind of treatment you're going to have or what kind of treatment you need. I don't believe in that. I believe that even though no more physical therapy might not have hurt this particular client, I still believe that his relationship between me and his doctor and for him to be able to access the medical care that his doctor says he needs. A good doctor. Qualified orthopedic surgeon. Let me ask you a couple of specific questions. Part of the argument seems to be you did nothing to move it towards surgery, yet there was a letter you sent demanding the surgery, correct? Yeah, but that part of the case came up in my testimony. That's completely untrue. They derived that concept that I intended to settle the case out of a letter from counsel to us. There's a letter in the finals I pointed out in my brief where he responds back to counsel after I was dismissed from the case and says, you told me, well he says Ken Ward, the name of the office, that the guy wanted to settle the case and they denied it. It's not true. So basically, I did try to settle that case and I never would. All right, so in summary, your position is you can document that you earned a fee in this case, correct? I believe so, yes sir. Okay. Thank you, counsel. Counsel, you may reply. Okay, fair enough. Thank you both, counsel, for your arguments in this matter. We've taken their advisement and written this position shall issue.